FILED
2013 Feb-26  AM 10:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| FARIA JOHNSON,<br>o.b.o. J.H., a minor child | } | |
| | } | |
| Plaintiff, | } | |
| | } | |
| v. | } | Case No.: 4:11-cv-03560-RDP |
| | } | |
| MICHAEL ASTRUE,<br>Commissioner of Social Security, | } | |
| | } | |
| Defendant. | } | |

## MEMORANDUM OF DECISION

Plaintiff Faria Johnson ("Plaintiff") brings this action on behalf of her son, J.H., a minor child, pursuant to 42 U.S.C. § 405(g) and 5 U.S.C. § 706, seeking reviewing of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying her claim for Children's Supplemental Security Income ("SSI"). Based upon the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

## I.     Proceedings Below

Plaintiff filed her application for SSI on behalf of J.H. on August 26, 2008. [R. 91]. Plaintiff alleged the disability began on March 1, 2008. [R. 91]. Plaintiff's application was initially denied by the Social Security Administration on January 22, 2009. [R. 82]. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ") on February 2, 2010. [R. 7, 38-59]. In his June 24, 2010 decision, the ALJ determined that J.H. was not disabled under § 1614(a)(3)(C) of the Social Security Act (the "Act"). [R. 27]. After the Appeals Council denied Plaintiff's request for review of the ALJ's decision, that decision became the final decision of the Commissioner, and

therefore a proper subject of this court's review.  [R. 1].  42 U.S.C. § 405(g).

J.H. was eight years old at the time of the hearing.  [R. 43].  Plaintiff alleges that J.H. has been disabled since March 1, 2008 because of hyperactivity.  [R. 51].  Plaintiff also suggested at the ALJ hearing that J.H. suffers from a learning disability.  [R. 53-54].

During the alleged period of disability, J.H. received treatment primarily from Dr. Christopher Kirya, M.D. of Naki Pediatrics and Adolescent Health Center.  [R. 210-220; 254-269]. Dr. Kirya's treatment notes reflect prescriptions for Vyvanse, which Plaintiff testified J.H. takes every morning before he goes to school.  [R. 50; 210-220; 254-269].  In January 2010, Dr. Kirya referred J.H. to Dr. Benjamin Carr, M.D. for an evaluation.  [R. 256].  After his initial exam on January 28, 2010, Dr. Carr diagnosed J.H. with attention deficit hyperactivity disorder ("ADHD").[1] [R. 257].  Dr. Carr's exam notes state that J.H. "has no history of serious illness, injury, operation, or hospitalization."  [R. 257].  Dr. Carr noted that J.H. was "guarded, distracted, minimally communicative, and tense." [R. 257].  Dr. Carr also stated that although there were signs of anxiety, J.H.'s "social judgment [was] fair."  [R. 257].  Dr. Carr noted that J.H.'s ADHD medication "has been helpful, but [J.H.] has significant mood symptoms" and that he "appears to be having depressive episodes and possible periods of increased energy, racing thoughts, and decreased need for sleep."  [R. 257].  As a result, Dr. Carr prescribed Abilify to target "depressive and impulsive/expansive symptoms." [R. 257].

A progress note from Tami Sparks, a nurse practitioner affiliated with Dr. Carr's practice, on March 11, 2010 noted that J.H. was "attentive" and "communicative" and that he "exhibit[ed] speech that is normal in rate, volume, and articulation, and [was] coherent and spontaneous."  [R.

---

[1]Dr. Kirya's treatment notes also reflect an ADHD diagnosis. [R. 210-220].

271].   Sparks's progress note also indicated that J.H.'s "mood [was] entirely normal with no signs of depression or mood elevation." [R. 271].   Sparks recommended continuing Vyvanse for J.H.'s ADHD symptoms and increasing his Abilify dosage.   [R. 271].

Another progress note from Sparks on April 8, 2010 indicates that Plaintiff reported that J.H. had "greatly improved since [his] last visit." [R. 273].   This progress note also states that J.H. has taken his medication regularly with no side effects.   [R. 273].   Sparks noted that J.H. was "fully oriented" and that his "vocabulary and fund of knowledge indicate cognitive functioning in the normal range." [R. 273].   Sparks increased J.H.'s Vyvanse dosage and continued his prescription for Abilify.   [R. 274].

Progress notes dated May 17, 2010 and June 14, 2010 indicate that J.H. had more mood swings and has "some good days and some bad days." [R. 275, 278].   On May 17, 2010, Sparks continued J.H. on his current dose of Vyvanse and increased his Abilify dosage.   [R. 275].   On June 14, 2010, Sparks increased J.H.'s dosage of Vyvanse and continued his Abilify dosage.   [R. 278].

On December 17, 2008, J.H. was examined by Jack Bentley, Jr., Ph.D., at the behest of the Social Security Administration.   [R. 180-184].   After his mental examination, Dr. Bentley diagnosed J.H. with ADHD, oppositional defiant disorder of childhood, and borderline intellectual functioning. [R. 183].   Dr. Bentley stated that J.H.'s prognosis was "favorable for present level of functioning." [R. 183].   Dr. Bentley also administered the Wechsler Intelligence Test, which yielded a Verbal IQ of 83, Performance IQ of 73, and a Full Scale IQ Estimate of 76.   [R. 182].   Dr. Bentley noted that these results placed J.H.'s verbal skills in the lower end of the low-average range and his visual spatial skills in the lower end of the borderline range.   [R. 182].

3

On January 26, 2009, Plaintiff's attorney referred J.H. to David R. Wilson, Ph.D., for a psychological evaluation. [R. 238-247]. After his examination, Dr. Wilson diagnosed J.H. with ADHD, combined type oppositional defiant disorder, and possible mental retardation vs. borderline intelligence. [R. 243]. Dr. Wilson also administered the Wechsler Intelligence Test, but Dr. Wilson noted it could not be formally scored in a valid way.[2] [R. 241]. Dr. Wilson administered four subtests from the Wechsler Individual Achievement Test. [R. 241]. J.H. was oppositional and got virtually no correct answers. [R. 241]. At times, J.H. would answer correctly "almost in spite of himself, but then he would change to an incorrect response." [R. 241]. Dr. Wilson noted that it was "meaningless to calculate scores because he [has] not given good effort." [R. 241]. Dr. Wilson also completed a child's mental health source statement in which he selected boxes indicating J.H. had marked degrees of limitation in the following areas: (1) attending and completing tasks, and (2) interacting and relating with others. [R. 244-245].

On January 22, 2009, Larry Dennis, Ph.D., a state agency medical consultant, completed a childhood disability evaluation. [R. 174-179]. Dr. Dennis concluded that J.H. has a less than marked limitation in the following areas: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; and (4) caring for himself. [R. 176-177]. Dr. Dennis further concluded that J.H. has no limitation in the following areas: (1) moving about; (2) manipulating objects; and (3) health and physical well-being. [R. 177].

---

[2]Dr. Wilson noted that J.H. would have scored the lowest possible score but that this was not a valid estimate of his ability. Dr. Wilson indicated that J.H. got no correct answers on most of the subtests, but that when he tried again J.H. would get a few right but then would not put forth effort. [R. 241].

II.     **ALJ Decision**

For a child to be determined disabled as defined under the Act, the child must "have a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906. A physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

Social Security regulations provide a three-step test for determining whether a child is disabled. 20 C.F.R. § 416.924(a); *see e.g., Wilson v. Apfel*, 179 F.3d 1276, 1277 n.1 (11th Cir. 1999); *Cole v. Barnhart*, 436 F.Supp.2d 1239, 1241 (N.D. Ala. 2006). First, the ALJ must determine whether the child is engaging in substantial gainful activity. "Substantial gainful activity" is work activity that involves doing significant physical or mental activities for pay or profit. 20 C.F.R. § 416.972. If the child engages in substantial gainful activity, then the child cannot claim disability regardless of the child's medical condition. 20 C.F.R. § 416.924(b). If the child is found to not be engaging in substantial gainful activity, the analysis proceeds.

In the second step, the ALJ must determine whether the child has a medically determinable impairment or a combination of medical impairments that is "severe" under the Act. 20 C.F.R. § 416.924(c). At this stage of the analysis, "severe" as understood under Social Security Regulations requires that the child have a medically determinable impairment, or an impairment or combination of impairments, that is not merely a slight abnormality that causes no more than minimal functional limitations. *Id.* Absent such a "severe" impairment, the child may not claim disability. *Id.*

5

Third, the ALJ must determine whether the child's impairment meets or medically equals an impairment included in the Listing of Impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1 (a "Listing"). 20 C.F.R. § 416.924(d). If the child's impairment meets a Listing, the child is declared disabled. *Id.* Alternatively, the child may also be declared disabled if the child's impairment or combination of impairments functionally equals a Listing. *Id.* In determining whether the child's impairment or combination of impairments functionally meets a Listing, the ALJ must consider the child's functional capacity with regard to six domains.[3] 20 C.F.R. § 416.926a. To functionally equal a Listing, the child's impairment or combination of impairments must result in "marked" limitations in two of the domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d). A "marked" limitation is one that "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(I). It is "more than moderate" but "less than extreme" and is equivalent to the functioning one "would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." *Id.* An "extreme" limitation is one that "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(I). A finding of "extreme" limitation requires a limitation that is "more than marked" and is "the equivalent of the functioning [one] would expect to find on standardized testing with scores that are at least three standard deviations below the mean." *Id.* In assessing whether the child has a "marked" or "extreme" limitation or combination of limitations, the ALJ must consider the

---

[3]A domain is a broad area of functioning. The six domains considered in determining whether a child's impairment functionally equals a Listing are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(i)-(vi).

functional limitations from all medically determinable impairments, including impairments that are not severe. 20 C.F.R. 416.926a(a). The ALJ must consider the interactive and cumulative effects of the child's impairment or combination of impairments in any affected domain. 20 C.F.R. 416.926a(c).

In this case, the ALJ determined that J.H., the child claimant, has not engaged in substantial gainful activity since the application date. [R. 17]. The ALJ then found that J.H. has the following severe impairments: (1) attention deficit hyperactivity disorder ("ADHD"); (2) borderline intellectual functioning ("BIF"); and (3) oppositional defiant disorder ("ODD"). [R. 17]. Nevertheless, the ALJ concluded that J.H. does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 17]. The ALJ also determined that J.H. does not have an impairment or combination of impairments that functionally equals the listings. [R. 17]. In reaching his conclusion, the ALJ found that J.H. had "less than marked limitation[s] in the following domains: (1) acquiring and using information; (2) attending and completing tasks; (3) relating with others; and (4) the ability to care for himself. [R. 20, 22-23, 25]. The ALJ found that J.H. had "no limitation" in the following domains: (1) moving about and manipulating objects; and (2) health and physical well-being. [R. 25-26].

Two of J.H.'s teachers at Oscar Adams Elementary School completed Teacher Questionnaires. [R. 106-116; 161-166]. Mr. Miles Mason's teacher questionnaire, completed on November 7, 2008, states that J.H. does not have a "serious" or "very serious" problem completing a variety of tasks compared to the functioning of same-aged children without impairments. [R. 110-112]. The questionnaire also indicates that J.H. can perform numerous tasks with no problem or only a "slight problem." [R. 110-112]. Ms. Patricia Burttram completed a questionnaire on May 19,

2009. [R. 161-166]. Ms. Burttram's questionnaire also indicates that J.H. does <u>not</u> have a "serious" or "very serious" problem completing a number of tasks compared to the functioning of same-aged children without impairments. [R. 161-165]. Ms. Burttram also concluded that J.H. could perform a variety of tasks with no problem or only a "slight problem." [R. 161-165].

## III.    Plaintiff's Arguments for Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative, remanded for further consideration in light of new evidence, including the following: (1) a teacher questionnaire from Brandy Newton completed on January 27, 2010; (2) a second teacher questionnaire from Ms. Burttram completed on January 27, 2010;[4] and (3) records from Dr. Kirya dated between November 2, 2009 and January 19, 2010. [Docs. #9, #14]. First, Plaintiff argues that the ALJ substituted his opinion for that of examining psychologist, Dr. Wilson, and rejected the opinion of Dr. Wilson without substantial evidence and valid explanation. [Doc. #9, pgs. 13-17]. Second, Plaintiff argues that the ALJ's decision that J.H. does not meet Listing 112.11 is not supported by substantial evidence. [Doc. #9, pgs. 17-23]. Third, Plaintiff contends that the ALJ's decision is not supported by substantial evidence considering the evidence submitted to the Appeals Council but not contained in the record or considered by the ALJ. [Doc. #9, pg. 23].[5]

---

[4]Again, a teacher questionnaire from Ms. Burttram dated May 19, 2009 was included in the record and considered by the ALJ. [R. 161-166].

[5]On January 29, 2012, Plaintiff filed a Motion to Remand Pursuant to Sentence 4. [Doc. #10]. On May 3, 2012, the court denied without prejudice Plaintiff's Motion because Plaintiff made the same arguments in her Memorandum of Support of Disability [Doc. #9 at 23]. [*See* Doc. #16]. The court noted that it would address the substance of this issue in this decision on the merits, and the court does so below in Part V.C. of this memorandum of decision.

**IV.    Standard of Review**

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision,  *see* 42 U.S.C. § 405 (g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988);  *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings.  *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.  For the reasons set forth below, the ALJ's decision denying J.H. benefits is due to be affirmed.

V.      **Discussion**

After careful review, the court concludes that the ALJ's decision is due to be affirmed for the

following reasons.

      A.      **The ALJ Did Not Substitute His Opinion for an Examining Psychologist, Dr. Wilson, Nor Did the ALJ Reject the Opinion of Dr. Wilson Without Substantial Evidence or Valid Explanation**

Plaintiff claims the ALJ (1) did not provide a valid explanation for rejecting the opinion of

Dr. Wilson, and (2) substituted his own opinion for that of Dr. Wilson. [Docs. #9, #14].  The

Commissioner maintains that the ALJ properly considered the factors outlined in the regulations for

determining the amount of weight to assign to a medical opinion and rejected Dr. Wilson's opinion

based on a number of these factors. [Doc. #12].

The Eleventh Circuit recently clarified the standard the Commissioner is required to utilize

when considering medical opinion evidence.  In *Winschel v. Commissioner of Social Security*, 631

F.3d 1176, 1178-79 (11th Cir. 2011). the Eleventh Circuit held that whenever a physician provides

a statement regarding judgments about the nature and severity of a claimant's impairments, including

symptoms, diagnosis, and prognosis, what the claimant can and cannot do despite impairments, and

the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ "to

state with particularity the weight given to it and the reasons therefor."  *Id.*  "In the absence of such

a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the

merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d

731, 735 (11th Cir. 1981).  "Therefore, when the ALJ fails to 'state with at least some measure of

clarity the grounds for his decision,' we will decline to affirm 'simply because some rationale might

have supported the ALJ's conclusion.'" *Winschel*, 825 F.3d at 1179 (quoting *Owens v. Heckler*, 748

F.2d 1511, 1516 (11th Cir. 1984)).  When determining the amount of weight to assign to a medical opinion, an ALJ, pursuant to the regulations, must consider several factors, including the following: (1) examining relationship; (2) treatment relationship; (3) supportability; (4) consistency; (5) and specialization.  20 C.F.R. § 416.927(d).

In this case, the ALJ assigned little weight to the opinion Dr. Wilson for a variety of reasons. First, the ALJ noted that he could not ignore the context in which Dr. Wilson's opinion  was produced. [R. 19].  The ALJ stated that J.H. underwent the examination that formed the basis of Dr. Wilson's opinion "not in an attempt to seek treatment for symptoms" but instead "in connection with an effort to generate evidence for the current appeal."  [R. 19].  The ALJ went on to note that while such evidence is legitimate and deserving of due consideration [R. 19], Dr. Wilson was a one time examiner and his opinion was based "on an isolated examination rather than a longitudinal record of treatment history."  [R. 19].  The ALJ also remarked that Dr. Wilson's opinion "contrasts with the evaluations of the teachers;[6] both of [whom] had daily contact with the claimant over a course of months."  [R. 19].  Furthermore, the ALJ noted that Dr. Wilson did not attempt to reconcile Plaintiff's allegations with the reports of the teachers.  [R. 19].  Finally, although Dr. Wilson's Global Assessment of Function ("GAF") score and the score provided by Dr. Carr are consistent, the ALJ determined that Dr. Wilson's opinion contrasted with "the medical records generally"[7]

---

[6]Social Security Ruling 06-03p recognizes that "non-medical sources" who have had contact with individuals in their professional capacity are valuable sources of evidence for assessing impairment severity and functioning. Moreover, these sources "have close contact with the individuals and have personal knowledge and expertise to make judgments about their impairment(s), activities, and level of functioning over a period of time." SSR 06-03p.

[7]Specifically, the ALJ referred to J.H.'s treating physician's notes from June 30, 2008 to October 27, 2008, records provided by the C.E.D. Mental Health Center (where J.H. was last treated in May 2007).  Those notes indicate J.H. was doing well.  The ALJ also referenced the notes of Dr. Carr dated January 28, 2010, and notes from J.H.'s treating physician from March 2, 2009 to August 18, 2009. [See R. 210-220; 221-235; 256-258; 259-269].

which "support improvement or stabilization with proper medications and do not support allegations of serious symptoms and limitations." [R. 20].

The totality of these inconsistencies combined with Dr. Wilson's one-time isolated examination lead the ALJ to give Dr. Wilson's opinion little weight. The task before this court is simply to determine whether the ALJ's decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982).  Because the ALJ's decision to give Dr. Wilson's opinion little weight is indeed supported by substantial evidence, the ALJ's decision is due to be affirmed on this ground.  *See e.g.*, *McSwain v. Bowen*, 814 F.2d 617, 619 (11 th Cir. 1987) (the opinion of a one-time examiner is not entitled to deference); *Wainwright v. Comm'r of Soc. Sec.*, 2007 WL 708971 at *2 (11th Cir. 2007) (the ALJ was entitled to reject an examining psychologist's opinion because it was contrary to the assessments of the other state agency psychologists and because the examining psychologist examined the claimant only once and was not a treating physician).

### B.    Substantial Evidence Supports the ALJ's Decision that J.H. Did Not Meet or Medically Equal the Requirements of Listing 112.11 and that J.H.'s Impairments Did Not Functionally Equal the Listings

The ALJ found that listing 112.11 was not satisfied because J.H.'s impairments imposed no more than moderate functional limitations. [R. 17].  Plaintiff's Memorandum [Doc. #9] and Reply Brief [Doc. #14] assert that J.H. meets listing 112.11.  However, neither Plaintiff's Memorandum nor Plaintiff's Reply Brief attempt to explain why the ALJ erred.  Moreover, neither document presents any legal argument or legal authority on this claim.  Instead, Plaintiff simply lists the evidence she believes supports a finding that J.H. meets listing 112.11.  However, as it stands, the argument remains too undeveloped for the court to make any determinations regarding it.  *See*

12

*N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citations to authorities, are generally deemed to be waived."). Nevertheless, the court has carefully reviewed the record and concludes that the ALJ's decision is supported by substantial evidence.

The ALJ properly considered all relevant evidence, including: objective medical evidence and other relevant evidence from medical sources; information from other sources, such as school teachers, family members, or friends; the claimant's statements (including statements by the claimant's parent(s) or caregivers); and all other relevant evidence in the case records. *See* 20 C.F.R. 416.924(a); SSR 09-02p. Here, the ALJ considered the opinion of the state agency medical consultant's opinion and assigned it great weight due to "its consistency with the record as a whole," which included evidence produced at the hearing and the two teachers' questionnaires. [R. 20]. The ALJ noted that the teachers' questionnaires did not identify any serious or very serious problem with J.H.'s overall functioning. [R. 19]. Moreover, the ALJ discussed in detail what evidence supported his findings regarding the six domains of functional limitations. [R. 20-27].

In the domain of acquiring and using information, the ALJ found that J.H. has less than marked limitations. [R. 20-21]. Although Plaintiff testified that J.H. reads at a first grade level and cannot tell time or make change [*See* R. 54], consultative examiner Dr. Bentley found that J.H.'s intellectual functioning was in the lower end of the low average range to the lower end of the borderline range. [R. 184]. Dr. Bentley's report states that J.H. "recited the alphabet and counted to 15," that he "stated the days of the week and months of the year" and that he "completed three of six simple, single digit mathematical calculations." [R. 184-185]. The only potentially contrary medical evidence was that provided by Dr. Wilson, whose evaluation did not result in valid IQ scores

and did not provide an opinion regarding any degree of limitation in this domain.  [R. 241, 244].

Additionally, the teachers' questionnaires, which were based upon their respective observations of

J.H. over a period of months, revealed no more than "slight" or "obvious" problems in this domain

and no ratings for "a serious problem" or "a very serious problem."  [R. 106-116; 161-166].

Furthermore, the ALJ commented that, although J.H.'s grades show he struggles somewhat in

reading, he is performing reasonably well in other areas, including language, written expression,

math, and science.  [R. 253].

In the domain of attending and completing tasks, the ALJ found that J.H. has less than

marked limitations.  [R. 22].  To be sure, Plaintiff testified that J.H. does not complete school tasks,

cannot stay focused to do homework, requires supervision when following simple directions, and

is slow in completing a task.  [*See* R. 52, 57-58].  However, examining psychologist Dr. Bentley's

evaluation revealed only mild restlessness and a normal mental status.  [R. 182].  Dr. Bentley also

noted that J.H. completes activities of daily living with limited reminders from his mother.  [R. 182].

The ALJ further found that J.H.'s last treatment notes related to his ADHD (from C.E.D. Mental

Health in 2007) indicated he was doing well.  [R. 222].  Additionally, the ALJ observed that J.H.'s

primary care treatment notes indicate that his ADHD medicine has been effective with refills at the

same level until 2009 when the dosage was increased [R. 212-220; 259-269], and that the teachers'

questionnaires did not support serious or marked limitations in this domain.  First, the ALJ noted that

Mr. Mason, who observed J.H. for three months, rated him with no more than "slight" to "obvious"

problems in this domain.  [R. 22; 106-116].  Second, the ALJ noted that Ms. Burttram, who observed

J.H. for one year, rated him with no more than a "slight problem" in this domain with only "an

obvious problem" with respect to 1 of 13 areas: "paying attention when spoken to directly."  [R. 22;

14

161-166].  The ALJ also found it noteworthy that Ms. Burttram did not rate J.H. with a "serious problem" or "a very serious problem" in any area in this domain.  [R. 22].[8]

In the domain of interacting and relating with others, the ALJ found that J.H. has less than marked limitations.  [R. 23].  The ALJ discussed Plaintiff's testimony that J.H. cusses at her, breaks games if he does not win, fights with others, has knocked holes in the walls, and has come close to setting his room on fire.  [R. 23].  The ALJ also noted Plaintiff's testimony that J.H. participates in an after school program on Wednesdays and in church activities such as arts and crafts, field trips, and basketball.  [R. 23].  The ALJ considered Dr. Bentley's remarks that J.H. has a generally normal mental status, good eye contact, and no obvious impairment in receptive or communicative skills. [R. 23; 182].  Instructive to the ALJ's weighing of the evidence was his observation that J.H. was five years old when he tried to set his room on fire and that his behavior appeared worse before his extensive treatment at C.E.D. Mental Health for ADHD. [R. 23].  According to the ALJ, the teachers' questionnaires further supported the conclusion that he does not have serious or marked limitations in his social or communicative condition. [R. 24].

In the domain of moving about and manipulating objects, the ALJ found that J.H. has no limitations.  [R. 25].  The ALJ noted that Plaintiff's testimony alleged no limitation in this domain. Plaintiff testified that J.H. plays games and participates in activities such as basketball. [R. 25; 49]. Furthermore, the ALJ noted that neither the teachers' questionnaires nor Dr. Wilson's report marked any limitation in this domain.  [R. 25].

---

[8]The only contrary evidence in the records is that Dr. Wilson found "marked" limitations in this domain.  [R. 22; 244].  However, the ALJ assigned little weight to this opinion [*see* R. 19] and found the teachers' evaluations more persuasive and a better indicator.  [R. 22].  As noted above in Part V.A, *supra*, the ALJ's decision to give Dr. Wilson's opinion little weight is supported by substantial evidence.

In the domain of caring for yourself, the ALJ found that J.H. had less than marked limitations. [R. 25]. The ALJ first commented that Plaintiff's testimony about J.H. sticking himself with pins and talking about suicide occurred alongside an intensity of symptoms when he was in kindergarten and before his treatment at C.E.D. Mental Health. [R. 25]. The ALJ also noted that treatment notes from J.H.'s primary care physician (and from Dr. Carr's evaluation) indicated improvement with proper medications. [R. 25; 212-235; 256-258; 259-269]. Additionally, the ALJ commented that the teachers' questionnaires do not support serious or marked limitations as these teachers rated J.H. with either "no problem" or no more than a "slight problem" in this domain. [R. 26]. The only contrary evidence is the opinion of Dr. Wilson that J.H. has "marked" limitations in this domain. [R. 26; 245-246]. However, the ALJ once again stated that he assigned little weight to this opinion [*see* R. 19] and found the teachers' evaluations more persuasive and a better indicator. [R. 22].[9]

In the health and physical well-being domain, the ALJ found no limitations. [R. 26]. Other than some testimony of sleepiness at school, the ALJ stated that Plaintiff provided no other evidence of any limitation in this domain. [R. 26]. Plaintiff also testified that J.H. experiences no side effects from his medications. [R. 26; 50]. Moreover, the ALJ noted that Plaintiff told consulting psychologists that J.H. was physically healthy. [R. 26; 181; 239]. Additionally, the ALJ cited the medical evidence in the record as reflective of a chronic condition related to J.H.'s behavior, not his physical condition. [R. 26].

Based upon the foregoing, the ALJ found that J.H. does not have an impairment or combination or impairments that results in either "marked" limitations in two domains of functioning

_____

[9]*See supra* note 8.

16

or "extreme" limitation in one domain of functioning. [R. 27]. According to the ALJ's review of the record, J.H.'s symptoms have greatly improved with proper treatment and he has no more than moderate functional limitations. [R. 27].

This court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The court's review of the ALJ's decision is limited to whether his decision is supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d at 1221. As such, the court finds that the ALJ correctly applied the appropriate legal standards and that the ALJ's decision that J.H. does not meet listing 112.11 is supported by substantial evidence. Thus, the Commissioner's decision is not due to be reversed on this ground.

### C.   Remand is Not Warranted Due to New Evidence Submitted But Not Considered by the Appeals Council

Plaintiff submitted three additional pieces of evidence to the Appeals Council on July 7, 2011, including: (1) a teacher questionnaire from Brandy Newton dated January 27, 2010; (2) a teacher questionnaire from Ms. Burttram dated January 27, 2012; and (3) treatment records from J.H.'s primary care physician dated between November 2, 2009 and January 19, 2010. [See Doc. #9-1]. The Commissioner states that the Appeals Council apparently misplaced this evidence because it was not incorporated into the record and there is no indication from the August 4, 2011 Appeals Council order that it considered the evidence. [Doc. #12; R. 1-5].

Because this is extra-record evidence that was not considered in the administrative proceedings, the court is to evaluate it under the standard for a remand under sentence six. 42 U.S.C. § 405(g). *See, e.g.*, *Ingram v. Comm'r of Soc. Sec.*, 406 F.3d 1253, 1268-69 (11th Cir. 2007)

(evidence outside of the record should be considered under sentence six); *Chiress v. Comm'r of Soc. Sec.*, 2010 WL 261221, at *3-5, *7 (M.D. Fla. June 7, 2010) (applying sentence six when evidence that was submitted the Appeals Council was neither mentioned it its order nor incorporated into the record). Under sentence six, for a remand to be in order, the claimant must establish that: (1) the additional evidence is new and noncumulative; (2) the additional evidence is material such that a reasonable probability exists that it would change the administrative result; and (3) there was good cause for the failure to submit the evidence at the administrative level. *See Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986); *Cherry v. Heckler*, 760 F.2d 1186, 1192 (11th Cir. 1985).

The Commissioner concedes that the evidence presented by Plaintiff is new. [Doc. #12]. The Commissioner also waives the good cause argument because Plaintiff submitted the evidence before the Appeals Council denied her request for review and a showing of good cause is not necessary in that situation. [Doc. #12]. However, the Commissioner argues that remand under sentence six is not warranted because the evidence is not material. [Doc. #10]. After careful review, the court agrees.

First, Ms. Burttram's January 2010 questionnaire does not differ substantially from her May 2009 report. Indeed, the only noteworthy change is that her January 2010 report indicates that J.H. may have developed marked limitations in the functional domain of acquiring and using information. [*See* Doc. #9-1]. Ms. Burttram's January 2010 questionnaire indicated that J.H. had a "very serious problem" reading and comprehending written material, a "serious problem" understanding school content and vocabulary and providing organized oral explanations and adequate descriptions, and either "obvious" problems or "slight" problems in the remaining seven areas in this domain. [Doc. #9-1]. Otherwise, her January 2010 questionnaire is consistent with her May 2009 report.

18

Moreover, Ms. Newton's questionnaire indicates that J.H. has an "obvious problem" in eight of ten areas in this domain, a "serious problem" in one area, and a "slight problem" in one area. [Doc. #9-1]. Other than in one area, the functional domain of acquiring and using information, these two teacher questionnaires are consistent with the two questionnaires contained in the record indicating that J.H. has no serious problems in any of the other functional domains. [*Compare* Doc. #9-1 with R. 109-116; 161-166]. These two teacher questionnaires are not material because, at best, they show that J.H. has "marked" limitations in only one functional domain. Even if established, this finding would not result in a determination that J.H. is disabled because he must have an "extreme" limitation in one domain or a "marked" limitation in at least two domains. *See* C.F.R. § 416.926a(d). Therefore, the court concludes that these two reports are not material because there is no reasonable probability they would change the administrative result. *See Caulder*, 791 F.2d at 877 (11th Cir. 1986).

Second, the treatment records from J.H.'s primary care physician are likewise not material and would not change the administrative result. The additional records indicate that: (1) J.H. continued to receive treatment for ADHD from November 2, 2009 through January 19, 2010; (2) that J.H. briefly suffered from bronchitis, conjunctivitis, and an insect bite; and (3) that Dr. Kirya referred J.H. to Dr. Carr for an evaluation. [Doc. #9-1]. The ALJ concluded that J.H.'s ADHD was a severe impairment. [R. 17]. Therefore, the note reflecting continued treatment for ADHD would not change the result reached by the ALJ. Furthermore, treatment notes indicating that J.H. was treated for common childhood illnesses such as bronchitis, conjunctivitis, and an insect bite do not in any way demonstrate that his impairments satisfy or functionally equal a listing. Moreover, Dr. Kirya's referral of J.H. to Dr. Carr for an evaluation in January 2010 does not suggest an alternative finding.

Dr. Carr's evaluation and progress notes reflect improvement with continued treatment for ADHD. [*See* R. 256-259; 271-276]. These additional medical records would not alter the administrative finding and are not material. Therefore, a remand under sentence six is simply not warranted.[10]

## VI.     Conclusion

The court concludes that the ALJ's determination that J.H. is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. Additionally, remand under either sentence four or sentence six of 42 U.S.C. § 405(g) based upon evidence presented but not considered by the Appeals Council is not warranted.

For all these reasons, the Commissioner's decision is due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this _____26th_____ day of February, 2013.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

[10]Plaintiff originally sought remand under sentence four of 42 U.S.C. § 405(g). [Doc. #10]. Although the court maintains that it should apply the sentence six remand standard to the new evidence presented, even if evaluated under sentence four, the result is the same. Under sentence four, remand based on evidence that is first submitted when the matter is before the Appeals Council is appropriate when "that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. As already discussed, this new evidence is not material and would not change the administrative result. Therefore, the court finds this evidence does not render the ALJ's denial of benefits erroneous. Thus, the Commissioner's decision should be affirmed on this ground as well.